In the Matter of the Application for the Appointment of an Administrator in the Estate of JAMES SULLIVAN, Alleged to Be Deceased.

Surrogate's Court, Orleans County, Septe .ber 24, 1927.

**Executors and administrators — appointment of administrator of alleged deceased person — alleged decedent has been absent and not heard of or from for more than seven years — additional evidence raised presumption of death.**

Letters of administration are granted on the estate of an alleged deceased person on the theory that having been absent and not having been heard of or from for more than seven years, he is presumed to be dead, in view of other evidence which tends to show that an effort has been made to locate him at different times without success, that his relations with his family were cordial and that he knew when he was last in communication with his family that he would come into an estate upon the death of his father.

APPLICATION for appointment of administrator in estate of alleged deceased person.

*Thompson Bros.*, for Thaddeus Sullivan, petitioner.

*Sanford T. Church*, for John Sullivan.

HARCOURT, S. Margaret Sullivan died intestate some thirty-three years ago, leaving her surviving her husband, James Sullivan, and as her only heirs at law, three sons, James, John and Thaddeus Sullivan. She died seized of real property, consisting of a house and lot. situate in the village of Albion, N. Y. The husband occupied the same, by right of curtesy, until his death which occurred in April, 1922, at which time he was ninety-seven years of age. After the death of the father, and in May, 1922, an action for partition of said real estate was brought, the same was sold and the proceeds were divided among the three children, John and Thaddeus receiving their share and the share belonging to James being paid into the hands of the county treasurer. The two sons John and Thaddeus are living. The son James has not been heard of for over seven years, and this proceeding is brought for the granting of letters of administration on his estate. The petition filed in this court sets forth personal property belonging to the said James Sullivan of about the sum of $1,500.

The petitioner offers no direct evidence of the death of James Sullivan but asks that it be judicially determined that he be presumed to be dead, for the reason that his whereabouts have not been known and that he has not been heard from for seven years and more.

The law contains the general presumption that a person who has been continuously absent from his home or place of residence, and unheard from, or of, by those who, if he had been living, would naturally have heard of him, through a period of seven years, is dead. (*Butler* v. *Mutual Life Insurance Co.*, 225 N. Y. 197, 203.)

To give rise to this presumption, more than the mere fact of absence during the period must be established. Evidence must be produced to justify the inference that the death of the absentee is the probable reason why nothing is known about him.

The evidence in this case discloses that James Sullivan, if alive, would be about sixty-five years of age; that he left his place of residence at Albion, N. Y., after attaining his majority and was gone for a number of years; that he returned to Albion sometime after his mother had died and remained there for about two or three months; that he again left and has not been heard from for about thirty-three years, except that about fifteen years ago the brother Thaddeus received a letter purporting to come from the chief of police of St. Louis, Mo., stating, in substance, that James Sullivan, who claimed to be a brother of his, was sick and destitute and that further particulars might be had by addressing City Hospital, St. Louis, Mo.; that he, Thaddeus, caused a letter to be written to the hospital and was later informed that word had been received from the hospital to the effect that James had been cured and had gone away. At the time of the partition action the attorney for the plaintiff caused to be mailed to St. Louis, Mo., a copy of the summons and complaint which was returned " undelivered," and at the same time caused to be published in the daily newspapers of said city a notice asking for the whereabouts of the said James Sullivan but no information was obtained. A letter was written to every Catholic rectory of St. Louis, Mo., asking that it be announced in the churches that any one who had any information concerning James Sullivan of Albion, N. Y., be requested to communicate with one of the brothers, Thaddeus Sullivan, of Albion, N. Y. The evidence also shows that many inquiries were made from a considerable number of people as to the whereabouts of the said James Sullivan but nothing has been heard from him except as above stated. The evidence discloses that the said James Sullivan knew that his mother was the owner of the real estate above mentioned and other personal property; that his father had

the right of curtesy in said real estate and that upon his death that he would become entitled to his share thereof. The father, if living, would now be over 100 years of age.

The evidence further discloses that the said James Sullivan was unmarried and was on good terms with the members of his family.

The evidence further shows that the said James Sullivan had been employed in railroading and in operating an elevator in a silver mine.

Before a court is justified in presuming the death of a person, at a designated time, because of his absence, the law only requires that the proof should remove the reasonable probability of James Sullivan being alive. (*Butler* v. *Mutual Life Insurance Co., supra; Matter of Mason,* 121 Misc. 142.)

Assuming the letter received from the chief of police of St. Louis was *bona fide* concerning the said James Sullivan, some fourteen or fifteen years have elapsed since that time, during which nothing has been heard from him. He knew of the death of his mother and of the property which she owned and that he, upon the death of his father, would be entitled to his portion. He was on good terms with his family, thus though impelled by the strong and controlling motives to make himself known, if living, of affection, family ties and hope of gain in pecuniary advantage, he is silent for fourteen or fifteen years, which silence, in my judgment, would presumably not have continued in view of the interest drawing him to his family and the property in which he had an interest, if he was alive. It seems to me in view of these facts that his death is the probable reason why nothing is known about him and that the reasonable probability of his being alive at this time is removed. Under such circumstances we may fairly presume him to have died and such view is sustained by the authorities. (*Karstens* v. *Karstens,* 20 Misc. 247; *Matter of Wagener,* 143 App. Div. 286.)

Decreed accordingly.